[Crim. No. 5259.   Second Dist., Div. Three.   Jan. 26, 1955.]

THE PEOPLE, Respondent, v. M. W. McCLEAN, JR., et al., Appellants.

Jesse A. Hamilton for Appellants.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney, Jere J. Sullivan and Robert Wheeler, Deputy District Attorneys, for Respondent.

VALLÉE, J.—Defendants appeal from orders revoking probation and from judgments thereafter entered sentencing McClean to state prison and Bertha Germon to the institution for women. ▉ The orders revoking probation made before rendition of the judgments are not appealable and the appeals therefrom will be dismissed. Those orders are reviewable on the appeals from the judgments. (*People* v. *Robinson*, 43 Cal.2d 143, 145-146 [271 P.2d 872].)

In March, 1951, defendants pleaded guilty to one count of grand theft and to two counts of forgery. The grand theft charge was that defendants had feloniously taken $27,564.11, the property of Flintridge Heights Mutual Water Company, Inc., a corporation. One of the forgery charges was that defendants had forged a grant deed and had uttered the same with intent to cheat and defraud Benedict Heights, Inc., a corporation, and its shareholders and creditors. The other forgery charge was that defendants had forged a grant deed and had uttered the same with intent to cheat and defraud Flintridge Heights, Inc., a corporation, and its shareholders and creditors. The prosecution arose out of the activities of defendants in the operation of three corporations —Benedict Heights, Inc., Flintridge Heights, Inc., and Flintridge Heights Mutual Water Company, Inc.—which they apparently controlled. Prior to these proceedings Flintridge Heights, Inc., had been adjudicated bankrupt.

On May 2, 1951, proceedings were suspended and defendants were granted probation for a period of six years on condition that each defendant must report as required and must cooperate with the probation officer and anyone designated by him in some proposition to work out the situation to the satisfaction of all persons concerned. On granting probation, the judge said to defendants:

"I think that the threat of jail should be held over their heads, and that is what the court tends [sic] to do. . . . Now, that doesn't mean that that is all there is to this thing, that you are going to go out of here scot-free. It means that you are going to have to work this thing out together; give these people value received or you are going to be brought in here as probation violators and possibly be sent to the penitentiary. In other words, you either do or you don't; if you do we can perhaps clean this matter up; if you don't it means Tehachapi for Mrs. Germon and San Quentin for you, Mr. McClean. You understand that, do you? . . . I am going to give you

this time to try to work this out. We will see what your intentions are. It won't take 6 years to find out, and I am sure that if the probation officer comes in to court in the next 6 months with the report that you are not cooperating that you will probably serve time.''

On October 31, 1951, defendants being present, the order granting probation was modified as to each defendant as follows:

''The order requiring restitution is modified in this respect as to each defendant: If and when the matter is reduced to civil judgment, that judgment shall become part of the terms of probation in this case. The Probation Officer is to follow through and determine whether reduced to judgment; if so, the Probation Officer is to report back to the Court for further instructions as to the payment of judgment.''

On December 3, 1953, defendants being present, the probation officer reported to the court that the matter had been reduced to judgment and that there was now a judgment in the amount of $29,700 against defendants jointly and severally.

On January 28, 1954, the terms of probation were modified as follows:

''Payment of $56,700. in civil judgment is made part of the terms and conditions of probation and each defendant is ordered to pay it jointly and severally. It is further ordered that they pay $30,000. of said amount within sixty days or failing in this, that defendants have a Certified Public Accountant issue a complete financial statement reflecting their income and receipts since November 1947, and that this include any real or personal property which they may have sold or conveyed or disposed of in any way to other people.''

At that time the court stated to defendants:

''I have read Judge Carter's opinion.[1]  I am thoroughly

---

[1]The opinion of Judge Carter, which was included in the report of the probation officer, in part says:

''This case presents a sorry tale of fraud, reckless violation of law and utter disregard for the rights of creditors.

''The bankrupt corporation, Flintridge Heights, Inc., was incorporated on May 3, 1948. . . .

''The remaining defendants in the case are Bertha M. Germon, one of the promotors, her husband, Louis Germon, Matthew W. McClean, Jr., brother of Bertha and one of the promotors and his wife, Eugenia K. McClean.

''. . . Two tracts of land were involved; . . .

''Sales were made from unrecorded maps of the three proposed tracts . . .; such sales of course were void. . . . [The corporation] deeded out approximately one-half of the lots to the four defendants herein and placed a blanket trust deed on all the property in the Tract for

in accord with some of the conclusions if not all of the conclusions that he has made. . . . He states that there is 'A sorry tale of fraud, reckless violation of law and utter disregard of the rights of creditors.

" ' ["]Funds of the corporation [Flintridge Heights, Inc.] were handled by various defendants as if they were the personal property of the defendants. The evidence shows the Court finds a conspiracy between the four remaining defendants' including these two before this court, 'to defraud the

$65,000.00. As a result none of the buyers in the tract received title to their property and now are creditors of the bankrupt estate with claims filed in the bankruptcy proceeding.

"Most of the escrows were handled through Santa Monica Escrow Company which permitted the escrows to be robbed of the funds deposited by buyers before the escrows could be closed and title delivered. The escrow permitted various of the defendants to draw funds from these escrows from time to time; the license of the escrow company was later revoked. . . .

"Fraud abounds throughout the record. Bertha Germon took title under the alias, Mary Ellen Anderson to property in Benedict Canyon and then deeded as Mary Ellen Anderson to the corporation. The escrow shows that the consideration of $26,000.00 was paid out of escrow.

"Funds of the corporation were handled by various defendants as if they were the personal property of the defendants. No proper Minutes or records were kept except for one or two meetings where a document had to be executed by the corporation. . . . The promotors made secret profits on the transfer of the property in Benedict Canyon and on the Flintridge property. The Flintridge property was contracted for by Matthew McClean and then paid for almost entirely out of the funds deposited by prospective buyers buying from unrecorded maps. After the property was paid for with these monies, McClean then deeded to the corporation. A mutual Water company was formed for the Flintridge property and the corporation manipulated by the promotors purported to give the Water company corporate ground and facilities for a well in return for 77 shares of stock; but previously the Water facilities had been deeded to the defendant, Eugenia McClean and thus the water company took nothing. Bertha Germon converted the 1949 Studebaker originally costing about $3500 when it was about a year and a half old. So much for the sordid tale that lies behind this case.

"The evidence shows and the court finds a conspiracy between the four defendants remaining, Bertha Germon, Louis Germon, Matthew McClean and Eugenia McClean (and Edward McClean not a party to this action) to defraud the corporation and its creditors. In addition to the facts above recited, money was transferred from the corporation to certain of these defendants and to M.G.M. The two McCleans and Bertha endorsed the name of M.G.M. as payee on checks constituting funds of the corporation. They treated the corporation funds as if they were their own.

"Property was purchased in the name of Matthew McClean paid for out of corporate funds, and in fact from the creditors' money paid for lots. But though the corporation paid for the property, the buyers whose money in truth paid for the property, never got title to these lots in the property purchased. Escrows were robbed before closing, and laws recklessly violated. . . ."

corporation and its creditors. Escrows were robbed before closing and laws recklessly violated'——

"I note your comment that the only reason they are unable to protect themselves or make any showing is because of their failure to have any books. That follows right along with the pattern of a person who has fraud in his heart. He doesn't keep books for the reason that he doesn't want the books to disclose his business. I am satisfied that although Mrs. Germon may make the claim that the only time she ever told a lie was when she pleaded guilty, that that was perhaps, the only time she has told the truth."

On June 24, 1954, defendants being present, the matter came on for hearing on the report of the probation officer as to the progress of probation. The court stated:

"The Court is concerned with the payment of $56,700 civil judgment and a $30,000 amount within sixty days from January 2nd, 1954 or January 28th; it is blurred here and I can't make out which it is. That has not been made and no effort has been made to pay it. . . .

"[W]e have the statement before the Court here that the defendants are in possession of $120,000.00 or assets worth that. . . .

"The date of this offense is December 1947. That is seven years ago. The complaint was not filed until February of 1951. The plea of guilty was entered on May 2, 1951 to one count of grand theft and two counts of forgery, and I think that any fair minded person will agree that this Court has been more than reasonable in giving these defendants an opportunity to work it out. . . . I think that any fair minded person all [sic] also agree that these defendants have not cooperated one iota with the court in the efforts that have been made to straighten out this situation.

"In May 1951 probation was granted. On October 31st, 1951, certain other terms and conditions were imposed and then the matter has been on the calendar from time to time since October 31st of 1951, until the Court has just come to the definite conclusion that there is no honest effort on the part of either one of these defendants to comply with the orders of this court. . . .

"[T]his Court has extended every opportunity to these defendants to cooperate, and they have not in good faith cooperated with the Court. We said that on May 13th and nothing has been done since that time which would indicate that we are going to get any cooperation on these terms and

conditions. . . . I have read the opinion of Judge Carter; I have read the statements of Judge Pearson in the matter, and I am satisfied that this was fraud, with fraud from the beginning to the end. I say that deliberately. There isn't any question in my mind about it. As to each of these defendants probation heretofore granted on Counts 6, 10 and 12 is ordered revoked and it is the judgment and sentence of this Court that each defendant be committed to the Adult Authority of the State of California for the term prescribed by law on each of those counts.''

An order was thereupon made revoking the probation of each defendant. Judgments were entered sentencing McClean to state prison and Bertha Germon to the institution for women.

Defendants contend that the condition of probation imposed on January 28, 1954, requiring them to pay a civil judgment in the amount of $56,700 and to pay $30,000 within 60 days was void and that because one of the corporations had been adjudicated bankrupt they were unable ''to work the matter out,'' consequently, revocation of probation was an abuse of discretion.

The court, in the order granting probation, may impose ''such terms and conditions as it shall determine''; ''may provide for reparation in proper cases''; may order the probationer to work and earn money to pay any reparation condition; and may impose and require such ''reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer, that should the probationer violate any of the terms or conditions imposed by the court in the instant matter, it shall have authority to modify and change any and all such terms and conditions and to reimprison the probationer in the county jail within the limitations of the penalty of the public offense involved.'' (Pen. Code, § 1203.1.) █ The court, during the term of probation, may modify its original order. (*In re Marcus*, 11 Cal.App.2d 359 [53 P.2d 1021].) We think it patent that the order of January 28, 1954, was not the imposition of an additional condition but was a modification of the original order.

█ The court may revoke probation solely on the basis of the probation officer's report. (*In re Levi*, 39 Cal.2d 41,

44 [244 P.2d 403].)  It appeared from the probation officer's report that defendants were "in possession of $120,000.00 or assets worth that" which were not affected by the bankruptcy proceedings. The record shows that over a period of three years the court extended defendants every opportunity to comply with its orders and that not only did they not comply but they made no effort to do so and exhibited a willful defiance of such orders. The court did not abuse its discretion in revoking the orders granting probation. (See *People* v. *Lippner*, 219 Cal. 395, 400 [26 P.2d 457].)

The appeals from the orders revoking probation are dismissed. The judgments are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied February 3, 1955, and appellants' petition for a hearing by the Supreme Court was denied February 24, 1955.