[Crim. No. 5342.   First Dist., Div. One.   Dec. 21, 1966.]

THE  PEOPLE,  Plaintiff  and  Respondent,  v.  RICHARD
LEE WILLIAMS, Defendant and Appellant.

Gary M. Merritt, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and John P. Oakes, Deputy Attorneys General, for Plaintiff and Respondent.

SIMS, J.—Defendant has appealed from a judgment entered on a jury verdict finding him guilty of assault with a deadly weapon in violation of section 245a of the Penal Code. He was sentenced to prison for the term prescribed by law, execution of sentence was suspended and he was placed on probation for a period of five years with nominal supervision on the condition that he serve one year in the county jail, and on the further condition that "he make restitution in the sum of $3,059.33 to the Diner's Club[1] within 18 months after his release from the County Jail."

Defendant's sole contention on appeal is that the condition of probation which provides for restitution to the Diner's Club is unconstitutional and void. More particularly he asserts that it violates constitutional prohibitions on imprisonment for debt, and constitutional guarantees of due process of law. For

---

[1]Although the true name of this institution appears to be Diners' Club, the record and order use Diner's, and that practice is followed herein.

reasons hereinafter set forth it is concluded that defendant's constitutional objections cannot be sustained but that the condition does exceed the scope of those authorized by law.

*The Facts*

The evidence presented at the trial reflects that the defendant and a female companion appeared at the store of one Hardwick, the victim of the assault, and the woman proceeded to select some clothes of a value in excess of $200. The defendant presented a Diner's Club card to the salesgirl who in accordance with the practice of the store took it to the proprietor for approval.

The proprietor took the card to the back hallway where he kept the imprinting machine and the current list of blacklisted cards which was received fortnightly from the Diner's Club. Upon finding the defendant's name and card number on the list he sent his wife out to talk to the customers and proceeded back to his office, where he placed a telephone call to the Diner's Club. He placed the card in a box of papers underneath his desk. He was instructed by the Diner's Club representative to tear the card in half and withhold it from defendant.

While the proprietor was conversing on the telephone the defendant came to the back office. The owner advised him it was private and that he should leave. The telephone correspondent interrupted to request to speak to the defendant. The defendant took the phone, but threw it down without answering.

The defendant told the proprietor that he did not need any authorization for the purchase involved, and upon being advised that he did, requested the return of his card. When the store owner told him he did not have it, the defendant struck the victim and there ensued an altercation in which the defendant assaulted the victim with a pair of dressmaker's scissors. The victim indicated to the defendant where the card had been hidden, and fled. The defendant in turn retrieved the card and left. The arrest and conviction of defendant followed.

The probation report was not made a part of the record on appeal. The record reflects that there was a report, and that a copy was furnished to and read by the attorney for the defendant. The report apparently reflected that two prior battery complaints had been made against defendant in connection with his conduct in repossessing television sets. The court had before it a letter from the attorney for the Diner's

Club which indicated that the balance owed by the defendant was $3,059.33. After confronting the defendant and his attorney with this information, the court asked defendant's counsel if there was anything further he wished to say, and upon receiving a negative response, pronounced the judgment and order from which this appeal was taken. The defendant immediately asserted his inability to pay the account as ordered, but raised no objections as to either the existence of or the extent of the liability.

Almost four weeks later the defendant was before the court on an application to be released on bail. Although the court commented that the defendant had run up about $3,500 on the credit card without the intent to pay, no attempt was made to contradict the judge or modify the terms of probation. Five days later the bail matter was again before the court, and in response to a similar comment, the defendant for the first time sought, and was immediately granted, an opportunity to speak on the point. He did not deny the existence or extent of the liability, but explained that he was using the Diner's Club card for all his personal expenses so that he could keep all of his other funds in his business; that it was the only bill he was not paying; and that he was approaching the point where he could have paid it off in a matter of a few months. He acknowledged that ethically it was wrong.

## Imprisonment for Debt

Section 15 of article I of the Constitution of the State of California provides as follows: "No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in cases of fraud, nor in civil actions for torts, except in cases of wilful injury to person or property; and no person shall be imprisoned for a militia fine in time of peace."

Defendant asserts that the terms of the judgment and order admitting him to probation violate the foregoing provisions because they provide for his imprisonment on failure to pay the prescribed sum to his creditor.

He relies upon the following principles enunciated in *In re Trombley* (1948) 31 Cal.2d 801 [193 P.2d 734] : "Although by its terms the [constitutional] prohibition is directed to imprisonment in civil actions, it has been held to apply in a criminal proceeding where it appears that the legislation under which the accused is charged constitutes an attempt to make the mere act of failing to pay a debt a crime. [Citations.] The courts will not permit the purposes of the constitutional provision forbidding imprisonment for debt to be

circumvented by mere form, and, accordingly, statutes declaring the nonpayment of an obligation to be a crime are examined in the light of this provision, and their validity is dependent upon whether the legislative objective is consistent with the constitutional guaranty." (31 Cal.2d 801 at p. 804;[2] see also *People* v. *Power* (1958) 159 Cal.App.2d Supp. 869, 871-873 [324 P.2d 113]; *People* v. *Neal C. Oester, Inc.* (1957) 154 Cal.App.2d Supp. 888, 890 [316 P.2d 784]; *People* v. *Rohe* (1952) 114 Cal.App.2d 605, 608-611 [250 P.2d 647]; *People* v. *Holder* (1921) 53 Cal.App. 45, 50-51 [199 P. 832]; *In re Crane* (1914) 26 Cal.App. 22, 25 [145 P. 733].)

The foregoing cases all refer to a prohibition on the Legislature's power to make the mere failure to pay a debt the subject of criminal punishment. In *Trombley* the court upheld the right of the Legislature to provide criminal punishment for an employer, who, having an ability to pay, intentionally refuses to pay wages he knows are due, because he thereby perpetrates a "fraud" within the constitutional exception (31 Cal.2d at pp. 809-810). In *Neal C. Oester, Inc.*, the court upheld provisions of similar nature in regard to wilfully failing or wilfully rendering oneself financially unable to pay sums withheld as unemployment insurance contributions (154 Cal.App.2d Supp. at pp. 891-893). The other cases cited held statutes or the application thereof unconstitutional where no "fraud" was demonstrated.

The phrase "the power to prescribe punishment in a criminal case may not be used to defeat the constitutional guaranty against imprisonment for debt," which is found in *Trombley* (31 Cal.2d at p. 805) and upon which defendant relies, must be construed in the foregoing setting. It is intended to apply, as is indicated by the language immediately preceding, to "*legislation* making mere failure to pay a debt a crime." (*Id.*, italics added.)

The order for payment in the present case stems from the assertion of powers conferred upon the trial court by the provisions of section 1203.1 of the Penal Code, the salient portions of which are set forth in *People* v. *McClean* (1955) 130 Cal.App.2d 439 [279 P.2d 87] at page 444, as follows: "The court, in granting probation, may impose 'such terms

[2]*In re Trombley* expressly disapproves statements in *In re Nowak* (1921) 184 Cal. 701, 708 [195 P. 402] and *In re Oswald* (1926) 76 Cal. App. 347, 349 [244 P. 940], to the effect that the constitutional prohibition against imprisonment for debt has no application in criminal proceedings. (31 Cal.2d at pp. 804-805.)

and conditions as it shall determine'; 'may provide for reparation in proper cases'; may order the probationer to work and earn money to pay any reparation condition; and may impose and require such 'reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer . . .' "

"Restitution or reparation as a condition of probation is expressly authorized by statute (Pen. Code, § 1203.1) and is sanctioned by case authority *(People v. Marin,* 147 Cal.App.2d 625, 626 [305 P.2d 659])." *(People v. Flores* (1961) 197 Cal.App.2d 611, 616-617 [17 Cal.Rptr. 382]; and see also *People v. Sidwell* (1945) 27 Cal.2d 121, 130 [162 P.2d 913]; *People v. Lippner* (1933) 219 Cal. 395, 398 [26 P.2d 457]; *People v. Collins* (1966) 242 Cal.App.2d 626, 640 [51 Cal. Rptr. 604]; *People v. Watso* (1966) 240 Cal.App.2d 773, 776 [50 Cal.Rptr. 31]; *People v. Mason* (1960) 184 Cal.App.2d 182, 186-188 [7 Cal.Rptr. 525]; *People v. Alexander* (1960) 182 Cal.App.2d 281, 292-293 [6 Cal.Rptr. 153]; *People v. McClean, supra,* 130 Cal.App.2d 439, 444; *People v. Labarbera* (1949) 89 Cal.App.2d 639, 643-644 [201 P.2d 584]; *People v. D'Elia* (1946) 73 Cal.App.2d 764, 769 [167 P.2d 253]; *County of Los Angeles v. Emme* (1940) 42 Cal.App.2d 239, 242 [108 P.2d 695].)

In fact *Trombley,* the very case upon which defendant relies, recognizes such statutory power and authorizes its application to secure payment of the sums fraudulently withheld in violation of the criminal statute (31 Cal.2d at pp. 811-812).

If the sentence in the instant case is to be executed it will be imprisonment for the aggravated assault and not imprisonment for breach of the conditions of probation which are extended to the defendant as a matter of grace to enable him to rehabilitate himself and avoid imprisonment. *(In re Osslo* (1959) 51 Cal.2d 371, 377 [334 P.2d 1]; *People v. Osslo* (1958) 50 Cal.2d 75, 103 [323 P.2d 397]; *People v. Trombley, supra,* 31 Cal.2d 801, 811.)

If the order for payment is otherwise valid, as is hereinafter discussed, it cannot be avoided on the ground that it violates constitutional prohibitions on imprisonment for debt. In the only reported case found dealing with this contention, the following is stated: "Appellant further argues that

to revoke probation for failure to comply with the condition of restitution is in effect to imprison him for debt. The answer to this argument is that probation is a matter of grace and cannot be demanded of right, and, whatever may be the rule under other statutes, under our law it is expressly provided that no one shall be put on probation except with his consent. Thus, appellant was given the privilege of probation upon certain conditions, which he voluntarily accepted. Having failed to perform the condition imposed, probation was revoked and sentence imposed. The sentence imposed was for the offense for which he was convicted, not as punishment for his failure to obey the condition of probation." (*Basile* v. *United States* (D.C.Mun. App. 1944) 38 A.2d 620, 622 (fns. omitted), approved *Freeman* v. *United States* (D.C. Cir. 1958) 254 F.2d 352, 353, fn. 2 [103 App.D.C. 15]; and see 16 C.J.S., Constitutional Law, § 204(4), p. 1011; *People* v. *Carr* (1964) 229 Cal.App.2d 74, 77 [40 Cal.Rptr. 58]; and *People* v. *Kovach* (1961) 197 Cal.App.2d 80, 84 [16 Cal.Rptr. 876].)

*Due Process of Law*

■ The defendant contends that the order of the court deprives him of his property without due process of law (Cal. Const., art. I, § 13; and see U.S. Const., 14th Amend.) He claims that the trial court had no jurisdiction over the subject matter of an alleged obligation to a third party who was not directly involved in the offense of which he was convicted, or over the person of that claimant (see *Harrington* v. *Superior Court* (1924) 194 Cal. 185, 188 [228 P. 15]); that he was denied notice and an opportunity for hearing on the question of the existence of and amount of this obligation (see *In re Lambert* (1901) 134 Cal. 626, 633 [66 P. 851, 86 Am.St. Rep. 296, 55 L.R.A. 856]); and that he has been deprived of the right to produce evidence and cross-examine adverse witnesses on those questions (see *Fewel* v. *Fewel* (1943) 23 Cal.2d 431, 436 [144 P.2d 592]).

The last two claims may be disposed of summarily. The facts recited above reflect that on three occasions the defendant had the opportunity to be heard on the question of the existence of and the extent of his obligation to the Diner's Club; and that with the exception of his explanation, noted in the facts, he never sought to produce evidence nor did he request the production of adverse witnesses for cross-examination on those questions, but by confession and avoidance impliedly acknowledged the asserted indebtedness. Where the defendant has had an opportunity to be heard, and where the

amount to be repaid is subject to modification upon a proper showing, the amount so determined will be upheld against attack on the ground that the court has abused its discretion. (*People* v. *Alexander, supra,* 182 Cal.App.2d 281, 293.)

*Statutory Powers and Public Policy*

Although not directly urged, the first contention suggests an examination of the provisions of section 1203.1 of the Penal Code dealing with the terms that may be imposed in an order granting probation to ascertain the limits, if any, upon the power of the court thereunder, and to determine whether or not there has been an abuse of the discretion thereby conferred in the instant case. (See 24 C.J.S., Criminal Law, § 1571(8), pp. 471-475; 21 Am.Jur.2d, Criminal Law, § 565, pp. 534-535; 2 Witkin, Cal. Crimes (1963) §§ 1072-1077, pp. 1011-1015.)

The courts of this state have not deliberated extensively on this question. The cases involving restitution and reparation which are referred to in the prior portion of this opinion for the most part involve restitution in the sense of restoration of what has been taken. In *Trombley* the court pointed out: "Although there had been no determination in a civil suit of the sums due the employees, the court nevertheless heard the testimony with respect to their claims and could properly consider this evidence in providing for reparation." (31 Cal.2d at p. 812; and see *People* v. *Watso, supra,* 240 Cal. App.2d 773, 776.)

An examination of *Lippner* (219 Cal. at pp. 397-400) reflects that there was a general condition to "reimburse the investors" although the defendant was convicted by plea of only three counts of an information containing at least 11 counts. (See also *People* v. *Mason, supra,* 184 Cal.App.2d 182, at pp. 185 and 187.) In *Flores* (197 Cal.App.2d 611, at pp. 612, 614 and 616) it appears that the restitution required covered payments received over a period greater than that in the charge. These cases suggest that the court is not limited to the transactions or amounts of which the defendant is actually convicted.

In *Alexander* (182 Cal.App.2d at p. 292) the condition of probation provided for payment to the insurer in an arson case without any contention being made that it was not the immediate victim. (Cf *People* v. *Grago* (1960) 24 Misc.2d 739 [204 N.Y.S.2d 774].) This would appear to be consistent with the broad language of the statute which provides that "The court may impose and require . . . reasonable conditions, as it may determine are fitting and proper to the end . . . that

amends may be made . . for any injury done to any person resulting from such breach ["of the law"]." (Pen. Code, § 1203.1.)

The practice of giving the probation officer the authority to determine the amount due and the manner of payment appears well established. (See *People* v. *Lippner, supra,* 219 Cal. 395, 397; *People* v. *Collins, supra,* 242 Cal.App.2d 626, 640; *People* v. *Mason, supra,* 184 Cal App.2d 182, 185; *People* v. *Marin, supra,* 147 Cal.App.2d 625, 626; *People* v. *McClean, supra,* 130 Cal.App.2d 439, 440.) This practice finds justification in the principle: "If the facts and circumstances indicate any error in the amount of restitution ordered or an injustice appears, the trial judge, upon proper application for modification of the terms of probation, is authorized to modify his original order. [Citation.]" (*People* v. *Flores, supra,* 197 Cal.App.2d 611, 617; and see *People* v. *Mason, supra,* 184 Cal App.2d 182, 187; *People* v. *Alexander, supra,* 182 Cal.App. 2d 281, 293; *People* v. *Marin, supra,* 147 Cal.App.2d 625, 627; *People* v. *McClean, supra,* 130 Cal.App.2d 439, 444.)

Where judgment is subsequently rendered against the defendant it may be incorporated in a probation order. (*People* v. *McClean, supra,* 130 Cal.App.2d 439, 441 and 444.) In *People* v. *D'Elia, supra,* 73 Cal.App.2d 764, 769, an assault case, it was held proper to provide that defendant should be able to pay any civil judgment which might be recovered.

From the foregoing it appears that the court in this action would have been warranted in conditioning probation upon the payment of any judgment for the ensuing damages which might be obtained by the victim of the assault of which he was convicted. (*People* v. *D'Elia, supra,* 73 Cal.App.2d 764, 769.) If defendant had been convicted of attempted theft by false pretenses because of the use of a credit card, which he fraudulently obtained or which he fraudulently retained after it was cancelled, there is some precedent for conditioning his probation upon the repayment of all of the acknowledged fruits of that fraud, even though his conviction only resulted in regard to one of a series of offenses. (See *People* v. *Lippner, supra,* 219 Cal. 395, 397-400.)

The questionable status of this case is occasioned by the fact that the amount allegedly owed to the credit card organization did not arise from the "breach of the law" of which the defendant stands convicted. The order, therefore, cannot be justified as a condition "fitting and proper to the end . . . that amends may be made . . . for any injury done to any

person resulting from such breach" (Pen. Code, § 1203.1). Presumably an order for the surrender of the credit card which was the subject of the altercation might so qualify. The indebtedness, however, whether properly or fraudulently created existed before the current offense.

Under the broad general powers conferred by the provisions of the statute the courts of this state have upheld a wide variety of conditions which have been imposed upon a defendant to restrict his activity. The objection that the condition is unreasonable or beyond the power of the court has generally been overruled. (*People* v. *Osslo, supra,* 50 Cal.2d 75, 103, union activities which led to assault; *People* v. *Bowley* (1964) 230 Cal.App.2d 269, 271 [40 Cal.Rptr. 859], motion picture business where 288a conviction connected with lewd film; *People* v. *Troyn* (1964) 229 Cal.App.2d 181, 182-183 [39 Cal.Rptr. 924], registration as a sexual offender where convicted of lesser nonregisterable but related offense; *People* v. *Caruso* (1959) 174 Cal.App.2d 624, 647 [345 P.2d 282], automobile business where convicted of grand theft arising in that business; *People* v. *Stanley* (1958) 162 Cal.App.2d 416, 420-421 [327 P.2d 973], denial of telephone to convicted bookmaker; *People* v. *Frank* (1949) 94 Cal.App.2d 740 [211 P.2d 350], practice of medicine by M.D. convicted of contributing to delinquency of a minor; *People* v. *Blankenship* (1936) 16 Cal.App.2d 606, 609-610 [61 P.2d 352], sterilization of one convicted of statutory rape.)

In *Osslo* the court remarks, "since it could be and presumably was found that these defendants are guilty of crimes growing out of union activities, it appears not improper that restrictions be placed upon such activities as a condition of probation." (50 Cal.2d 75, 103.) In the instant case it is apparent that the assault grew out of defendant's attempt to use credit privileges to which he was not entitled. *Osslo* would permit curtailing such activities in the future.

The rationale for the support of the foregoing provisions is found in the principle: "The granting of probation is entirely within the sound discretion of the trial court; a defendant has no right to probation; he does have the right, if he feels that the terms of probation are more harsh than the sentence imposed by law, to refuse probation and undergo such sentence. (*People* v. *Frank* (1949) 94 Cal.App.2d 740, 741-742 [211 P.2d 350].)" (*Id.,* p. 103; and see *People* v. *Blankenship, supra,* 16 Cal.App.2d at pp. 609-610.) In fact it has been stated and approved: "The right of a defendant to refuse

probation is a necessary safeguard against the possibility that the conditions of probation may be more onerous than the sentence. The power of the court to impose conditions of probation is very great." (*People* v. *Billingsley* (1943) 59 Cal.App.2d Supp. 845, 849 [139 P.2d 362], quoted and approved in *People* v. *Frank, supra,* 94 Cal.App.2d at p. 742.)

There are, however, some suggestions that one proceeding may not be used as a vehicle for imposing restitution or reparation for obligations which may be related to, but which are not directly attributable to, the principal offense.

Under the restricted provisions of the Federal Probation Act (18 U.S.C. § 3651) restitution or reparation is limited to those aggrieved by, and to the amount involved in the specific offense or offenses of which the defendant is convicted. (*Karrell* v. *United States* (9th Cir. 1950) 181 F.2d 981, 987, cert. den. 340 U.S. 891 [95 L.Ed. 646, 71 S.Ct. 206] ; and see *Basile* v. *United States, supra,* 38 A.2d 620, 622; and annotation 97 A.L.R.2d (1964) 798.) Similar results obtain in decisions construing the New York statute. (*People* v. *Funk* (1921) 117 Misc. 778, 779 [193 N.Y.S. 302-303] ; *People* v. *Grago, supra,* 24 Misc.2d 739, 747 [204 N.Y.S.2d 774, 776-778].)

The broad provisions of our statute permit the judge to venture far beyond the confined harbor suggested by such restrictive legislation. There are some bounds, however, within which he must set his course lest he come to grief upon the shoals of limitations imposed by public policy.

The trial judge has no right to insert a provision that he alone retains jurisdiction over the matter during the period of probation. (*People* v. *Osslo, supra,* 50 Cal.2d 75, 104.) A condition of probation which provides for banishment from the jurisdiction is also invalid. (*People* v. *Blakeman* (1959) 170 Cal.App.2d 596, 597-598 [339 P.2d 202] ; *In re Scarborough* (1946) 76 Cal.App.2d 648, 649-650 [173 P.2d 825] and see *People* v. *Cortez* (1962) 199 Cal.App.2d 839, 843 and 844 [19 Cal.Rptr. 50] ; *In re Newbern* (1959) 168 Cal.App.2d 472, 475 [335 P.2d 948] ; *People* v. *Lopez* (1927) 81 Cal.App. 199, 203 [253 P. 169].)

Where the party to be compensated was not the victim of the offense of which the defendant was convicted, and where there has been no determination in either a criminal or a civil proceeding of either the existence of or the amount of the liability, the right of the trial court to unqualifiedly proscribe the terms of restitution or reparation has been questioned.

In *State* v. *Scherr* (1960) 9 Wis.2d 418 [101 N.W.2d 77], the defendant was originally charged with making fraudulent deliveries and receiving $2,500. He plead guilty to a charge of stealing $350 during a specific 11-month period, and was granted probation on condition that he was to make restitution, in a sum to be determined, for the shortages during the period involved. A referral resulted in a figure of over $11,000 for a two-year period. The appellate court posed the problem as follows: ''The defendant cannot insist on the terms of probation and should not be allowed to strike a bargain with the prosecutor or the court on the matter of restitution as a condition for probation. Neither should the criminal process be used to supplement a civil suit or as a threat to coerce the payment of a civil liability and thus reduce the criminal court to a collection agency.'' (9 Wis.2d at pp. 423-424, 101 N.W.2d at p. 80.)

The court distinguished the federal and New York cases to which reference has been made above, because of the restrictive statutes upon which they are predicated, and distilled from other cases (hereinafter discussed) the rule ''that the damages must be directly caused by the acts for which the defendant was convicted, and the amount of restitution must be reasonable.'' (9 Wis.2d at p. 424, 101 N.W.2d at p. 81.)

It finally opined: ''We find no language in sec. 57.01, Stats., that the legislature intended by the word 'restitution' that the trial court should make an extensive investigation beyond the scope of the information in order to determine restitution. Likewise, we do not believe the legislature intended to foreclose the court from determining the amount of restitution where such amount is freely admitted by the defendant, whether or not such amount is charged in the information. Restitution as used in this section means the amount for which the defendant was convicted or which he freely admits. The issue confronting the trial court is the condition of probation in the public interest, not the civil liability of the defendant the enforcement thereof for the benefit of one or several members of the public.'' (*Id.*, p. 81.) It concluded that the defendant had freely admitted his liability for the deliveries made in the 11-month period and had agreed to a determination of the damage so suffered; that restitution to that extent was proper even though it exceeded the amount involved in the charge of which he was convicted; but that it was error for the court to require restitution for the entire period when the information charged but a limited period and the defendant

had not consented to the inclusion of the additional period or the total amount so determined.

The earliest case referred to in *Scherr* is *State* v. *Barnett* (1939) 110 Vt. 221 [3 A.2d 521], which involved restitution to the alleged victim of the accident by a defendant convicted of hit and run driving. The Vermont statute contained no provision expressly authorizing or restricting restitution or reparation. The majority of three justices, reviewed its own cases on the propriety of conditions for parole and earlier cases of other jurisdictions involving conditions of probation. It concluded that "restitution conditions in probation cases . . . must be for loss sustained as a direct consequence of the particular crime of which the respondent stands convicted." (110 Vt. at p. 231, 3 A.2d at p. 525.) In applying this principle to the facts before it, it determined that the claimed damages from the accident were not the result of the defendant's failure to stop and render assistance, and that therefore the imposition of the condition of the payment of damages was illegal and void as being against public policy because it made the court in a criminal action a collection agency to enforce a claim of a private nature. (110 Vt. at pp. 232-233, 3 A.2d at pp. 525-526.)

The two dissenting judges joined in an opinion which recognizes that restitution in the case of unliquidated damages can only be imposed with extreme caution. They would extend the right to restitution to the situation "when the offense for which the respondent stands convicted is closely related to an offense whereby another suffers injury." (110 Vt. at p. 237, 3 A.2d at p. 528.) In applying this rule to uphold the condition, they infer from the presumption in support of the original order that the judge found liability was established and that the defendant was not coerced into accepting the condition.

*People* v. *Prell* (1939) 299 Ill.App. 130, 133 [19 N.E.2d 637, 638] suggests that payment to the prosecuting witness of supposed damages as a condition of probation was not "restitution" and was invalid. Its value as a precedent is diminished by uncertainty as to the manner in which the condition was established.

*People* v. *Becker* (1957) 349 Mich. 476 [84 N.W.2d 833], involves the same factual situation as *Barnett*—the imposition of a condition of restitution on a hit and run driver. The Michigan court recognized that in a prior decision it had upheld as against constitutional objections a condition that a defendant convicted of negligent homicide make restitution in

a fixed sum to certain third persons. (*People* v. *Good* (1938) 287 Mich. 110, 115 [282 N.W. 920, 922-923]; and see *People* v. *Sarnoff* (1942) 302 Mich. 266, 273 [4 N.W.2d 544, 547]; and *State* v. *Summers* (1962) 60 Wn.2d 702 [375 P.2d 143, 145].) The opinion acknowledges that the defendant is given an alternative, but suggests that it may not be lawful to give him an alternative which requires him to give up a hearing as to his civil liability with all its constitutional safeguards. It then distinguishes between "restitution" which is authorized by the Michigan statute,[3] and "reparation," which has a broader connotation, and after considering *Barnett, supra,* and cases applying the federal rule lays down the following principle: "We conclude, from the authorities above cited, that even where imposition of the restitution requirement is held to be proper under the circumstances of the particular case before the court, it can be imposed only as to loss caused by the very offense for which defendant was tried and convicted. As to the other crimes or offenses there has been no fixing of his liability therefor in a constitutional sense." (349 Mich. at p. 486, 84 N.W.2d at p. 838.)

In response to the contention that the general power to impose conditions that may be "meet and proper" authorized the condition, the opinion refers to Michigan decisions against banishment (cf. California rule, *supra*) and against imposing costs for punishment rather than reimbursement of the public. It criticizes "sterilization" as a condition of probation (see *People* v. *Blankenship, supra,* 16 Cal.App.2d 606, 609), and concludes: "The point in all of the above is that although the statute authorizes the court to exercise its judgment with a broad discretion as to conditions of probation, the judgment exercised must be a legal judgment, consonant with our constitutional and statutory safeguards." (349 Mich. at p. 488, 84 N.W.2d at p. 839.)

From the foregoing it is concluded that the discretion to be exercised in imposing conditions of probation is not bounded by constitutional limitations, but by the terms of the statute which authorizes the grant of probation and the public policy of that jurisdiction. (See *Escoe* v. *Zerbst* (1935) 295 U.S. 490, 492-494 [79 L.Ed. 1566, 55 S.Ct. 818]; *Burns* v.

---

[3]The Michigan statute involved is quoted as follows: "The court may impose such other lawful conditions of probation, including restitution in while or in part to the person or persons injured or defrauded, as the circumstances of the case may require or warrant, or as in its judgment may be meet and proper . . ." (349 Mich. at p. 479, 84 N.W.2d at p. 835.)

*United States* (1932) 287 U.S. 216, 219-223 [77 L.Ed. 266, 53 S.Ct. 154].)

Several factors lead to the conclusion that there should be no hard and fast rule that money payments as a condition of probation be limited to the direct consequences of the particular crime of which defendant stands convicted. In the first place, the California provisions are broader than those considered in the foregoing cases. The statute refers to reparation, an unquestionably broader term than mere restitution. Although reparation in one sense is related to the particular breach of law as noted above, the statute also provides ''for reparation in proper cases,'' and for ''reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, . . . and generally and specifically for the reformation and rehabilitation of the probationer.''

That there are practical advantages to the defendant in affording him an opportunity to make restitution for other offenses not included in the charge is manifest from the practice of refraining from charging every specific offense, where upon conviction of one he may, as a term of probation, assume the obligation of making reparation for others. This practice was noted in *Scherr* (9 Wis.2d at p. 423, 101 N.W.2d at p. 80),[4] and applied in the California cases referred to above. (See *People* v. *Lippner, supra,* 219 Cal. 395, 397-400; *People* v. *Mason, supra,* 184 Cal.App.2d 182, 185 and 187; and *People* v. *Flores, supra,* 197 Cal.App.2d 611, 612, 614 and 616.)

The statement in the dissenting opinion in *Barnett,* which would extend the right to restitution to the situation where the injury results from an offense closely related to that for which the defendant stands convicted (110 Vt. at p. 237, 3 A.2d at p. 528), is more compatible with the principles of *Osslo* which have been referred to above (50 Cal.2d at p. 103),

---

[4]The opinion recites: ''When the information charges one offense and the amount of money is stated, there is no problem in determining restitution if the trial judge believes that restitution should be a condition of parole. However, it has been a common practice in Wisconsin for a prosecutor to charge a defendant with the commission of only one offense of a series. This is especially true involving the issuance of worthless checks. Some trial judges have discouraged prosecutors from charging defendants with several counts in order to cover all the offenses. Trial courts have often required as a condition of probation that the defendant make restitution of all bad checks which have been brought to its attention, although the defendant has been convicted or pleaded guilty only as to one of them. In these situations when the amount of the bad checks is determined on the face of the record or by admission of the defendant, no problem arises as to the amount of restitution which can be made a condition of probation.''

than is a strict rule of exclusion. "To accomplish the purpose of the statute, an exceptional degree of flexibility in administration is essential." (*Burns* v. *United States, supra,* 287 U.S. 216, 220.)

This, however, is not to say that every claim by one victimized directly or indirectly by defendant's conduct should be granted reparation or restitution, or that the criminal courts should be reduced to collection agencies.

The condition of repayment in the present case exceeds not only the express statutory provision for reparation, but also the scope of conditions which are countenanced by the broadest of the foregoing rules. The obligation involved antedated the occurrence which resulted in the offense of which the defendant stands convicted. There is nothing to show that the defendant either secured or retained the credit card through any fraudulent practices. The radio, television, and United States mail are replete with invitations encouraging not only the solvent, but also fools and knaves, to exercise credit privileges. No charge is made that the defendant used any alias or other subterfuge in an attempt to fraudulently secure credit. From all that appears he merely took advantage of the credit privileges extended by the credit card organization, and incurred a liability greater than he could liquidate. Although, as he admitted, this conduct was unethical, its relationship to the offense of which he was convicted is collateral only. It cannot be determined at what point, if at all, his indebtedness caused him to metamorphose from a simple debtor to a fraudulent swindler. If he in fact became the latter, the indebtedness thereby incurred would more properly be the subject of concern in proceedings for the prosecution of that offense. If not he should not be deprived of the right to discharge this indebtedness through channels open for the rehabilitation of debtors.

The trial judge may not be required to achieve in all cases the sublime results sought by Gilbert's Mikado, but in this case, the effort "to let the punishment fit the crime," cannot be supported by authority conferred by statute or existing precedents.

Defendant suggests that the condition be stricken and that the remainder of the order be left in effect. It has been stated: "Conditions not authorized by law are severable from and do not affect the valid conditions of the order. (*People* v. *Ramos,* 80 Cal.App. 528 [251 P. 941].)" (*People* v. *Mason,*

*supra,* 184 Cal.App.2d 182, 187.) In the instant case, the trial court in suspending execution of sentence placed the defendant on probation with nominal supervision. Whether or not the same terms would be imposed in the absence of the condition for "restitution" is a matter that should be determined by the trial court.

The judgment is affirmed. So much of the order admitting the defendant to probation as creates a condition that he make restitution to the Diner's Club in the sum of $3,059.33 is reversed, and the cause is remanded for review of the matter of probation on terms not inconsistent with this opinion.

Molinari, Acting P. J., concurred.