[Crim. No. 5989.    First Dist., Div. One.    Nov. 27, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT
SALA MILLER, Defendant and Appellant.

350

John D. Nunes, Public Defender, and Walter Culpepper, Assistant Public Defender, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Timothy A. Reardon, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from an order of the trial court modifying the terms of his probation in connection with his previous conviction of grand theft (Pen. Code, § 487). Defendant contends that the trial court invalidly increased the amount of restitution which he must pay as a condition of his probation.

Defendant was found guilty of unlawfully taking $821.60 from Robert J. Keefe. Imposition of sentence was suspended and defendant was granted probation for three years on October 1, 1963. In granting probation, pursuant to a recommendation by the probation officer, the trial court ordered that "Defendant shall. . . . Make restitution to and through the Probation Officer in such monthly installments as directed by said Officer." The court did not otherwise in its order specify the total amount of restitution or the persons to whom it was payable. The trial court, however, at the time of the hearing

of the report of the probation officer, stated that restitution was to be made to the "victims in this case,"[1] and also made the following statement: "Now you have got this rather, what I consider in your circumstances to be rather large restitution, in addition to which you have got all of the creditors that haven't been paid in the bankruptcy proceeding, and it may be at some later time you'll want to take care of them. I would hope you would."[2]

On June 23, 1964, more than eight months after the order granting probation, the probation officer submitted a memorandum to the trial court stating that an investigation revealed that several individuals had claims against defendant similar to those of the Keefes. This memorandum, noting that during the period of the presentence report the district attorney had advised the probation officer that only one person had suffered a loss as a result of defendant's activities, listed factual details of the claims. According to the memorandum, the Keefes had losses in excess of $821.60; the losses and claims of the other persons were based on defendant's breach of construction contracts with the claimants, a common factor in all of the claims being the acceptance of money for work which was not performed; and each of the claimants were listed and considered in the bankruptcy proceedings. The memorandum concluded by asking the trial court whether it wished to hear a petition to modify probation to determine the amount of restitution.

Shortly thereafter the probation office filed a supplemental memorandum summarizing the restitution claims, which amounted to approximately $8,900 including the Keefes' final claim, set at $2,041.60. The memorandum contained a notation that the court responded informally that no hearing was necessary and that payments should be allocated among the victims on a pro rata basis. No formal court action was taken. Defendant was informed of the increase in the amount of restitution and continued to make restitution payments without requesting a hearing.

The instant proceeding began in August 1966 when the probation office submitted a memorandum to the trial court followed by a petition for modification of the terms of probation

---

[1] The record discloses that defendant had obtained the $821.60 in connection with a contract with Mr. Keefe and his wife to remodel their home.

[2] The record discloses that defendant operated a general contracting company which was declared bankrupt prior to the institution of the criminal proceedings involved in this case.

requesting that defendant's probation period be extended three years because the total amount due as restitution would not be paid before defendant's probationary term expired. A hearing was held, at which defendant, through his attorney, objected to modifying probation, on the ground that restitution had already been made according to the original terms of probation. The district attorney who originally prosecuted defendant testified that there was considerable evidence in the criminal trial that defendant had cheated persons other than the Keefes. The probation officer testified that defendant had so far paid $1,575 as restitution, of a total of $8,600 due.

The trial court granted the probation officer's petition, extending the term of probation for three years.[3] Defendant appeals from this order, contending that it in effect increases the amount of restitution from $821.60 to $8,600 without there being presented to the trial court any new facts on which to base the modification of probation.

The foregoing facts present the questions whether there was a modification of the original terms of probation both with respect to the Keefes' claim in excess of $821.60 and the claims of the other individuals, and if so, whether the modification was valid.

■  With respect to the Keefes, we conclude that the original probation order encompassed reimbursement to them for all their losses arising out of their dealings with defendants' contracting company, and that the probation office, in requiring restitution to them in excess of the sum of $821.60, was not modifying the probation order but was acting within its terms. It is clear that the trial court in ordering restitution in its original order intended ''restitution to the victims'' without further limitation. Essentially it specified the recipients of the restitution but not the amount. Had it intended to limit the amount of restitution to the sum formally charged in the information it could easily have done so and would have had no need to leave the amount to the probation office for determination. The practice of giving the probation office the authority to determine the amount of restitution due and the manner of payment is well established and has been approved by the appellate courts. (See *People* v. *Lippner,* 219 Cal. 395, 397 [26 P.2d 457] ; *People* v. *Collins,* 242 Cal.App.2d 626, 640 [51 Cal.Rptr. 604] ; *People* v. *Williams,* 247 Cal.App.2d 394

---

[3]The court also reduced the monthly payments from $125 to $75 until two obligations owing by defendant were paid, at which time payments of $125 were to resume.

[55 Cal.Rptr. 550].) Insofar as the condition imposing such restitution is concerned, it was reasonably related to the criminal offense and therefore valid. (See *People* v. *Williams, supra,* at pp. 401-409.) The excess claims of the Keefes arose out of the defendant's activities in leaving the remodeling unfinished and in causing their property to become subject to various attachments. The actual criminal act whereby defendant obtained $821.60 was but one of a series of unethical or fraudulent acts of defendant in his construction operations with respect to the Keefe property. ■ It is reasonable to require defendant under these circumstances to make his victims whole and the court is not limited to the transactions or amounts of which defendant is actually convicted. (See *People* v. *Flores,* 197 Cal.App.2d 611, 612, 614, 616 [17 Cal.Rptr. 382] ; and see *People* v. *Williams, supra.*)

■ Proceeding next to the requirement that defendant reimburse individuals other than the Keefes, we hold that the informal procedure whereby this requirement was imposed amounted to a modification of the original probation order. The probation report indicates that when probation was imposed, the only person known to have suffered a loss at defendant's hands was Keefe. During the sentencing proceedings the court stated that defendant ''will pay restitution to the victims in this case'' and further that the court ''hoped'' that defendant would at some later time want to ''take care of'' the unpaid creditors in the bankruptcy proceedings. The contrast between the mandatory language used with reference to the victims and the precatory language used in speaking of the unpaid creditors shows that the court intended to order restitution only to the victims—Keefe and his wife—and not to the creditors.

■ Penal Code, section 1203.3 provides that the court has authority at any time during the term of probation to revoke, modify or change its order suspending imposition or execution of sentence. (See *In re Larsen,* 44 Cal.2d 642, 645 [283 P.2d 1043].) The power of modification conferred on the court is not limited to changing the term of probation, but applies generally to the order granting probation under proper circumstances and within reasonable limits. (*In re Marcus,* 11 Cal.App.2d 359, 360-361 [53 P.2d 1021] ; *In re Glick,* 126 Cal.App. 649, 651 [14 P.2d 796] ; *People* v. *Roberts,* 136 Cal. App. 709, 712-713 [29 P.2d 432] [disapproved on another point in *In re Larsen, supra*] ; *People* v. *McClean,* 130 Cal. App.2d 439, 444 [279 P.2d 87].) ■ Among the limita-

tions imposed upon the court's power to modify is that such an order cannot be based on the same facts as the original order granting probation because such a modification is in excess of the court's jurisdiction for the reason that there is no factual basis to support it. (*In re Clark,* 51 Cal.2d 838, 840 [337 P.2d 67]; *In re Bine,* 47 Cal.2d 814, 818 [306 P.2d 445].)

In the instant case the modification was not based upon the same facts as the original order granting probation but upon new facts brought to the attention of the trial court. Although at the time of sentencing the court was aware that there were unpaid creditors in the bankruptcy proceedings, whom it hoped defendant would reimburse, it was not aware of the identity of the claimants or of any of the specific details of their claims; nor was it aware that any of such claimants had been defrauded by defendant in a manner similar to that imposed upon the Keefes. It was not until the probation office had conducted its investigation and submitted its memorandum detailing such claims that the trial court had specific knowledge of the nature of the claims and the identity of the claimants.

We now proceed to the question whether it was reasonable to require defendant to reimburse persons other than Keefe. In *Williams, supra,* 247 Cal.App.2d at p. 402, we discussed the limitations on the conditions which a court may impose in granting probation. These conditions, obviously, apply to the probation office when it imposes conditions under authority delegated by the court. In *Williams* the defendant was convicted of assault on a salesman who refused to honor the defendant's Diner's Club card, which the defendant was wrongfully using. We held that the court could not require as a condition of probation that the defendant make restitution to the Diner's Club for debts incurred while using the credit card. We found that the credit card transactions were too remotely related to the substantive offense of assault of which the defendant was convicted to be a reasonable basis for a condition of probation. We stated in *Williams* that it is desirable for the trial court to be permitted a great deal of flexibility in imposing conditions of probation but that this "is not to say that every claim by one victimized directly or indirectly by defendant's conduct should be granted reparation or restitution, or that the criminal courts should be reduced to collection agencies." (P. 409.)

We pointed out in *Williams,* however, that restitution, as a

valid condition of probation, need not be limited to the direct consequences of the criminal acts of which a defendant is actually convicted. (See also *People* v. *Lippner, supra,* 219 Cal. at p. 400; *People* v. *Flores, supra,* 197 Cal.App.2d at pp. 612, 614, 616; *People* v. *Collins, supra,* 242 Cal.App.2d at pp. 629-632, 640; *People* v. *Alexander,* 182 Cal.App.2d 281, 292-293 [6 Cal.Rptr. 153].) In *Lippner* a defendant charged with violations of the Corporate Securities Act was required to reimburse all the investors in his fraudulent scheme. Not all these investors were victims of the criminal acts of which defendant was convicted, but all were persons who lost their money through illegal acts of the defendant. In *Flores* the defendant was convicted of welfare fraud and required to make restitution to the county, including payments received over a period greater than that covered by the criminal charge. The defendant, in *Collins,* was found guilty of six counts of grand theft and one count of conspiracy to commit grand theft based on his operation of a company dealing in second trust deeds. A condition that the defendant make restitution "in such amounts and manner" as the probation officer shall prescribe was held valid. There the money was apparently due to all persons who paid money to the company to be invested in second trust deeds. There were at least 455 such investors. In *Alexander,* the court conditioned the probation of a defendant convicted of arson upon the paying of restitution to the fire insurance companies insuring the premises.

Although *Lippner, Flores, Collins* and *Alexander* appear to be similar to the instant case, they are distinguishable in that in those cases the restitution was for damage caused by what reasonably appeared to be criminal conduct. ▮ In the present case there is no indication that any of the claims other than those of the Keefes were based on criminal conduct, nor is there any showing that they were based on fraudulent representations to the claimants of the sort made to the Keefes, resulting in defendant's conviction. Rather they are premised on defendant's breaches of construction contracts or on losses occasioned by liens being placed on the claimants' properties as a result of defendant's activities. Nevertheless, defendant's conduct toward the other restitution claimants arose out of his operation of the same business through which he defrauded the Keefes. In view of the circumstances that this business had been declared bankrupt shortly before the instant criminal proceedings and defendant owed over $10,000

to his creditors, the trial court and the probation office may have concluded that defendant's borderline operation of his construction company put him in a situation in which he was likely to engage in fraudulent activities so as to warrant the conclusion that defendant's rehabilitation could best be achieved in a context of complete reparation for the harm done his former customers. Such conclusion belies the remoteness we found to exist in *Williams* and appears to us to be a reasonable exercise of discretion.

Our conclusion should not be interpreted as authorizing the trial court or the probation office to range far afield in search of all possible losses caused by the defendant and require him to wipe his financial slate completely clean as a condition of his probation. Such a policy would reduce the courts to mere collection agencies. But we do agree with what seems to be the principle established by the California cases, that the probation office in fixing restitution should not be limited by the formalities of the criminal proceeding. Probation is granted in hope of rehabilitating the defendant and must be conditioned on the realities of the situation, without all of the technical limitations determining the scope of the offense of which defendant was convicted. In determining where to draw the line between what is a reasonable and what is an unreasonable condition, common sense and reason must limit the court's discretion. This discretion must not be disturbed unless there has been a manifest abuse.

In conclusion we note that the granting of probation is not a right but a privilege, and that if the defendant feels that the terms of probation are harsher than the sentence for the substantive offense he is free to refuse probation. (*In re Osslo,* 51 Cal.2d 371, 377 [334 P.2d 1] ; *People* v. *Williams, supra,* 247 Cal.App.2d at pp. 403-404; *People* v. *Frank,* 94 Cal. App.2d 740, 741-742 [211 P.2d 350] ; *Lee* v. *Superior Court,* 89 Cal.App.2d 716, 717 [201 P.2d 882] ; *People* v. *Alexander, supra,* 182 Cal.App.2d at pp. 292-293.) Here defendant could have urged the contentions he now urges at the original probation hearing or upon being apprised of the modification order. He did not do so. Under the circumstances it may be deemed that the conditions imposed were acceptable to him and that he did not consider them too onerous. (See. *People* v. *Alexander, supra.*)

The order is affirmed.

Sims, J., and Elkington, J., concurred.