Filed 1/7/14  P. v. Robertson CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B241119 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA354868) |
| v. | |
| JENNIFER J. ROBERTSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Gail Ruderman Feuer, Judge.  Affirmed in part, reversed in part, and remanded.

David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Jennifer Janet Robertson of grand theft of personal property in violation of Penal Code section 487, subdivision (a)[1] (count 1) and three counts of perjury by declaration in violation of section 118, subdivision (a) (counts 3, 12, 13).  In all counts, the jury found true the allegation that prosecution for the crime had begun within four years of the date the crimes were committed within the meaning of section 803, subdivision (c).

The trial court suspended imposition of sentence and placed defendant on terms and conditions of probation, including spending 180 days in county jail and performing 300 hours of community labor in count 1.  Based on the grand theft conviction in count 1, the court ordered defendant to pay $14,963.40 in restitution to the County of Los Angeles Stage One Child Care.  In counts 3, 12, and 13, the trial court imposed 180 days for each count and 300 hours of community labor, to run concurrently.

Defendant appeals on the grounds that:  (1) her conviction in count 12 for perjury by declaration must be reversed because she did not state that she worked for the named employer during that time period; (2) if this court affirms her conviction for theft, this court should remand the matter to the trial court to reconsider and recalculate the amount of restitution because the trial court mischaracterized the underlying convictions; and (3) if this court affirms her conviction for theft, this court should stay the sentences for any surviving perjury counts under section 654.

## FACTS

**Prosecution Evidence[2]**

Michelle Bell is the director of child care and development services with Children's Home Society of California (CHS), which is a family support agency.  The

---

[1]    All further references to statutes are to the Penal Code unless stated otherwise.

[2]    We recite the evidence regarding only the counts in which defendant was convicted and the counts regarding A.M. Market, since those charges are relevant to defendant's arguments on appeal.

agency provides services for low-income families through child care subsidies. One of Bell's duties is to handle allegations of fraud.

Parents qualify for child care benefits based on their income falling below a certain threshold. In addition, they must be involved in an activity, such as working, going to school, being in a training program, or seeking work. The child care may be provided by a licensed child care center or by a friend, relative, or neighbor of the parent. A parent must fill out an application form and, if working, an employment verification. CHS paid defendant's child care providers a total of $24,901.74 from May 2005 to April 2007.

Bell testified regarding the documents in defendant's parent file. The parent-provider child care services agreement signed by defendant on October 9, 2004, under penalty of perjury, contains certain conditions.[3] One requires the parent to notify the county or child care agency immediately of any changes to income, employment, and other details. Another condition states, "I must pay back any child care payments I'm not entitled to receive." Defendant signed the same document with these conditions on October 5, 2005; October 31, 2005; November 7, 2005; June 27, 2006; and October 18, 2006.

Defendant's file contained an employment verification for an employer named Seven Days Waste Control located at 6891 Faculty in Buena Park. Because there was no employee worksite address, the address given for the business is assumed to be the worksite. Defendant's position was "desk clerk." She attested she was paid in cash. A different employer verification form also listed Seven Days Waste Control in Buena Park

---

[3] The forms included the following statement: "I declare under penalty of perjury that this information is true and correct, and that the child care was provided for the purpose for which child care was certified. I understand that I may be prosecuted for fraud and required to repay any overpayment resulting from false or incorrect information provided herein. I understand that over billing on this report can lead to legal action resulting in penalties of a fine, imprisonment or both. Any overpayment is subject to recovery by the agency. I certify under penalty of perjury that payment requested is only for child care services."

as the employer. This form also failed to list a separate address for the employee worksite. The form said she was employed as a desk clerk/driver and paid in cash. The employer's last name was Austin with an illegible first name. On her family information sheet, defendant documented the days and hours of her work activity. She entered a workweek of Monday through Saturday from 8:30 to 5:00 and requested an hour of "child time,"[4] for a total of nine and one-half hours of child care while she worked at Seven Days Waste Control.

On another date, defendant filled in a declaration of self-employment and indicated she had contracted with Seven Days Waste Control at the same address in Buena Park. Bell stated this was conflicting information because one form said "self-employed" and the other said "employed." Defendant signed an affidavit on August 4, 2006, acknowledging that signing the statement while willfully stating as true any material matter she knew to be false was subject to the penalties prescribed for perjury. The affidavit stated that defendant began her employment at Seven Days Waste Control on May 16, 2006, and her position "is" that of desk clerk, indicating she was still employed there.

On August 28, 2006, a Program Specialist at CHS made an entry in the Family Correspondence Report, or case log,[5] pertaining to defendant. The specialist stated, "I called Joseph Austin at 3:40pm to verify employment for Jennifer Robertson. While speaking with him I realized that I call his cell phone instead of the office number. I asked if Jennifer was at work. He said no. I asked him for the office number. He stated that he didn't know it by memory. He paused and stated the office number was 714-441-7379. I let him know that I had a few question regarding Jennifer's employment information. He stated that she works Monday through Friday from 9am-5pm. . . . I asked how is she paid. He said that she was paid by cash and just recently paid by check.

---

[4]     "Child time" appears to refer to travel time.

[5]     Bell referred to the family correspondence report as a "case log" and "log notes."

I asked for the exact or estimated date that this change[] occurred and he stated that he wasn't sure. Before ending the call I asked him for the start date of employment. He stated that she has been working for years now. . . . The work number provided by Joseph Austin was not a valid number. . . . Moments later I receive a call from Jennifer regarding her case. . . . I let her know that I spoke with her employer and some of the information provided was not valid. I asked her if she was paid by check or cash. She stated by cash. I let her know that her employer informed me that she is paid by check. She paused. She then stated that he paid her twice with a personal check but she is generally paid by cash. I then asked for the office number. She stated that she didn't know it by memory but I could call 714-465-6634. I let her know that is Joseph cell phone number and I need the office number because based on the Employment Verification submitted on 6/27/06 she should be working at an office as a Desk Clerk Monday through Friday 9:00am - 5:00pm. She was silent. I let her know child care will be denied because the employment information submitted does not appear to be valid."

Andraya Aubrey testified that Joseph Austin is the father of her children. In June 2006 and in September 2006, she lived at 6891 Faculty Circle in Buena Park. She allowed Austin to use her address as a physical address, but he did not operate a business out of Aubrey's apartment. He had no employees working there, and defendant did not work there.

Defendant submitted an Employment Verification form to CHS on October 17, 2005, which certified that she was employed as a cashier by A.M. Market at "22202 L.B. Blvd." with an employment start date of May 19, 2005, and that she was paid in cash. The form was signed by someone in the "Employer/Supervisor" line. A CHS employee called and verified this employment in January 2006.

Defendant signed under penalty of perjury a form called "Employment data for CalWORKS Participants." The form listed her employer as A.M. Mini Market. She listed work hours for three days a week. Defendant submitted to CHS a Monthly Record of Income dated October 31, 2005. The form reflected that she had worked at A.M. Market from September 1 to September 30, 2005. Defendant also submitted to CHS an

5

affidavit, which she signed under penalty of perjury on November 17, 2005. The affidavit stated that defendant worked as a cashier and in maintenance services at A.M. Market. The form left blank the start date of her employment.

Jae Kim bought the A.M. Market at 2202 Long Beach Boulevard in 2003. He testified that he never employed defendant. The only women he employed were his wife and his sister-in-law.

**Defense Evidence**

Virginia Flores worked at the A.M. Market in 2005 and prior to 2005. Defendant also worked there in 2005. Their supervisor was an Asian woman. There was another woman who worked there who looked like her sister. Flores and defendant were not friends. After they stopped working at the market, Flores did not see defendant again until a month before trial. Defendant saw Flores at her workplace, a fast-food restaurant, and asked Flores to testify for her. Defendant worked at the A.M. Market as a cashier for "about a week."

**DISCUSSION**

**I. Sufficiency of the Evidence in Counts 12 and 13**

### A. *Count 12 Fails on the Dates Alleged*

#### 1. *Defendant's Argument*

Defendant argues that she never claimed she worked for Seven Days Waste Control between February 2, 2006, and March 31, 2006, which were the dates stated on the verdict form in count 12. Respondent concedes this issue.

#### 2. *Relevant Authority*

When the sufficiency of the evidence is challenged, we review the entire record in the light most favorable to the judgment below to determine if it contains substantial evidence; i.e., evidence that is reasonable, credible and of solid value, from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Solomon* (2010) 49 Cal.4th 792, 811.) This standard of review is applied regardless of whether the People rely primarily on direct or circumstantial evidence. (*Ibid*.) We presume in support of the judgment the existence of any fact the jury

6

reasonably could have deduced from the evidence. (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.) Thus, we must accept logical inferences the jury might have drawn, even if we would have reached a contrary conclusion. (*Solomon*, at pp. 811-812.)

### 3. Discussion

In count 12, the jury convicted defendant of perjury by declaration on or between February 2, 2006, and March 31, 2006, in violation of section 118, subdivision (a). The jury was instructed that the perjury charges in counts 3, 12 and 13 were based on defendant's alleged employment by Seven Days Waste Control.

In relation to defendant's attestations of employment at Seven Days Waste Control, the prosecution presented various documents. One document containing employment information, which was completed by defendant in September 2006, stated that her date of hire by the company was April 2006. (Peo. Exh. 3g.) An identical document filled out in June 2006 stated that her date of hire was April 20, 2006. (Peo. Exh. 3a.) In an affidavit she stated that she began her employment at Seven Days Waste Control on May 16, 2006. (Peo. Exh. 3e.) In a document entitled "Monthly Record of Income," the months of employment specified are June and July 2006. (Peo. Exh. 3f.) Other documents naming Seven Days Waste Control as defendant's employer, or stating that she was an independent contractor with the company, contain no dates of employment. (Peo. Exhs. 3d, 3b.) The Family Correspondence Report, which is a chronological record of all dealings with defendant, shows no entries between January 27, 2006 , and August 28, 2006. (Peo. Exh. 1-H, pp. 32, 31.)

Given the evidence presented to the jury, it appears that defendant's conviction in count 12 cannot stand. There is no evidence that she made any representation that she worked for Seven Days Waste Control during the period stated on the verdict form. Therefore, count 12 must be reversed.

### B. Alleged Absence of Certification in Counts 12 and 13

#### 1. Defendant's Argument

Defendant contends that, as to counts 12 and 13, CHS never certified defendant as being eligible for benefits by virtue of working at Seven Days Waste Control. According

to defendant, the records demonstrate that she first sought certification as being employed by Seven Days Waste Control on August 7, 2006, when she submitted the affidavit of self-employment previously signed for the Department of Public Social Services. (Peo. Exh. 3e.) CHS was skeptical and investigated defendant's employment. They denied certification. Therefore, defendant cannot have committed perjury by saying that child care benefits were provided by virtue of her certifying she was working with Seven Days Waste Control because CHS never certified her employment. Reversal of counts 12 and 13 are required due to lack of evidence supporting the charges.

### 2. *Discussion*

In count 13, the jury convicted defendant of perjury by declaration on or between May 1, 2006, and August 1, 2006, in violation of section 118, subdivision (a). The jury was told that count 13 referred to alleged employment at Seven Days Waste Control, as did count 12, discussed *ante*.[6]

Defendant cites entries in the Family Correspondence report, or case log (Peo. Exh. 1-H), showing that between January 1, 2006, and August 7, 2006, various actions were taken by CHS: defendant's file was approved, a checklist was sent to defendant, defendant delivered documents, another checklist was sent to defendant, and more

---

[6] CALCRIM No. 2640 was read to the jury as follows: "The defendant is charged in Counts 2, 3, 9, 10, 11, 12, 13, 14, and 15 with perjury, in violation of Penal Code section 118, subdivision (a). To prove that the defendant is guilty of this crime, the People must prove that: One, the defendant declared or certified under penalty of perjury under circumstances in which such declaration or certificate was permitted by law; Two, when the defendant declared or certified, she willfully stated that the information was true even though she knew it was false; Three, the information was material; Four, the defendant knew she was making a statement under penalty of perjury; Five, when the defendant made the false statement, she intended to declare or certify falsely while under penalty of perjury; and, Six, the defendant signed and delivered her declaration or certificate to someone else intending that this be circulated or published as true. The People allege that the defendant made the following false statements: . . . Two, the defendant was employed by Seven Days Waste Control. This applies to count 3 and counts 12 to 13; . . . and the child care was provided for the purpose for which child care was certified. This applies to counts 9 through 15. "

8

documents were delivered by defendant. Defendant then notes that the family correspondence report shows that in August 2006, CHS began attempting to verify defendant's employment at Seven Days Waste Control and that this process continued through September 26, 2006. On that date, CHS informed defendant that her "denial effective 7/31/06 stands. I was calling to notify her of her right to appeal." On September 27, 2006, defendant informed the caseworker that she was in the process of finding another job. All of these notes lead defendant to assert that "[defendant] cannot have committed perjury by stating that childcare was provided by virtue of her certification as working with Seven Days Waste Control because she was never certified as working there."

The exhibits show that defendant signed an affidavit on August 4, 2006, stating that she began her employment on May 16, 2006 at Seven Days Waste Control as a desk clerk. She stated that she worked a variable schedule from Monday through Sunday between the hours of 6 a.m. and 12:00 p.m. (Peo. Exh. 3e.) In one of the "request for employment verification" forms provided to CHS by defendant and filled out by Austin, the owner of Seven Days Waste Control, he stated that defendant's first day of work was April 21, 2006, and that the individual was currently employed by him. (Peo. Exh. 3a.) In a second such form, Austin stated that defendant was hired "04-2006," and that the individual was currently employed by him. He signed the form on September 14, 2006. (Peo. Exh. 3g.)

People's exhibits 13a through 13d are copies of child care provider payment requests for the period of April 2006 through July 2006. Each form was signed and dated by defendant and the child care provider on the first day of the month after the child care was provided. The dates of signature are May 1, 2006; June 1, 2006; July 1, 2006; and August 1, 2006. The bottom portion of the forms, designated for office use only, states that "The above Payment request is correct and approved for payment." Each of the four forms is dated and contains a signature in the "Verified By" signature line. Thus, defendant's child care provider was paid for child care during the months of April through July 2006.

9

In addition to the raw documentary evidence, Bell testified that the documents she had provided showed that CHS paid providers on behalf of defendant. This was shown by the provider payment requests, which indicated how much CHS paid, and by the voucher history by family. The voucher history for defendant showed the total number of payments her child care providers received, and it shows the check numbers for the payments. (Peo. Exh. 1-I.)

The prosecutor read to Bell the lines preceding the signature lines on the child care provider payment request form, which were "I declare under penalty of perjury that this information is true and correct, and that the child care was provided for the purpose for which child care was certified." (Peo. Exhs. 13a–13d.) When asked what that meant, Bell answered, "That means that everything that they have documented on that form is true and they are declaring that it is true." The prosecutor then asked, "Okay. Now, 'provided for the purpose for child care was certified,' what does that mean?" Bell replied, "*Certified means that it was approved by our agency*, that they are authorized or okay to use that number of hours and those days of child care, *and that we will pay for it*." (Italics added.) The following exchange then occurred:

"Q.    The child care has to be certified, correct?

"A.    Correct.

"Q.    And if the parent is actually not gainfully employed, it's false, is the child care authorized for the purpose for which it was certified?

"A.    No."

Given that CHS paid the child care providers named by defendant as caring for her children during the periods that she claimed she was working for Seven Days Waste Control, as attested to by the documents she provided, and given that the jury found that defendant's documents attesting to her employment at this company were false, there was sufficient evidence that the child care was not provided for the purpose for which child care was certified.

Defendant refutes this reasoning, which parallels that employed by respondent, by arguing that we cannot incorporate by reference the conviction in count 3 for perjury,

10

which defendant does not appeal. According to defendant, "[r]espondent argues that the childcare was not provided for the purpose for which it was 'certified' because appellant obtained certification under false pretenses. Thus, respondent argues, appellant committed perjury by stating that the childcare was provided for the purpose for which it was certified. This argument is circular."

We disagree. The jury found first beyond a reasonable doubt in count 3 that defendant unlawfully, under penalty of perjury, declared as true while knowing it to be false that her employer was Seven Days Waste Control between June 25, 2006, and September 4, 2006. This finding was independent of the finding in count 13. Having determined that defendant was not employed by Seven Days Waste Control during the specified time period, the jury reasonably inferred that the child care that CHS paid for during these months was not provided for the purpose for which child care was approved (or certified), i.e., so that defendant could have someone else care for her children while she worked at Seven Days Waste Control and traveled to and from Buena Park. This is not a situation where the conclusions in counts 3 and 13 contain no evidence that is distinct from these conclusions, which is the essence of a circular argument. Instead, the documentary evidence and testimony was used to prove both counts. (See *People v. Maury* (2003) 30 Cal.4th 342, 403 [same evidence showing use of force or fear in rape case can be used to show lack of consent]; *People v. Frye* (1998) 18 Cal.4th 894, 956 [from same evidence showing defendant entered residence with intent to steal, jury could reasonably infer defendant intended to take murder victims' property before killing them and was therefore guilty of robbery].) The evidence first showed that defendant lied about her employment. Since the jury found that defendant was not working at Seven Days Waste Control, as she claimed, it reasonably inferred that her child care was not provided for the purpose for which it was approved.

### C. Lack of Reliance by Victim

#### 1. Defendant's Argument

Defendant contends that CHS was immediately skeptical about her employment at Seven Days Waste Control and denied certification for her work there. To convict for

11

theft, the jury had to find that CHS relied on defendant's representations about her employment with Seven Days Waste Control when it parted with its money. According to defendant, CHS's own records proved that it did not. Thus, defendant's conviction for grand theft by the false pretense that she worked for Seven Days Waste Control fails for lack of evidence.

### 2. *Discussion*

The case logs, which defendant relies upon to show CHS's "immediate" skepticism, show that defendant's file was approved on January 27, 2006. (Peo. Exh. 1-H, p. 32.) Checklists requesting documents were sent to defendant and she went to the CHS office to deliver them on June 27 and August 7, 2006. On August 28, 2006, Lori Thomas, a Program Specialist, began verification of defendant's employment. She spoke with defendant that day and "let her know child care will be denied because the employment information submitted does not appear to be valid." (Peo. Exh. 1-H, p. 32.)

Exhibits 13a through 13d show that defendant's purported child care providers were approved for payment of $540 for providing child care during April 2006, $621 for May 2006, $594 for June 2006, and $567 for July 2006. (Peo. Exhs. 13a-13d.) People's exhibit 1-I shows the check numbers for each of these payments to defendant's relatives, who were the providers. (Peo. Exh. 1-I, p. 2.) Bell testified that the request for employment verification forms, which were filled out by the owner of Seven Days Waste Control, were among the documents regularly relied upon by all staff at the agency to assist in providing benefits. (Peo. Exhs. 3a & 3g.) Likewise, the form entitled "Employment data for CalWORKS Participants (Peo. Exh. 3b), the Declaration of Self-Employment (as an independent contractor at Seven Days Waste Control) (Peo. Exh. 3d), and the Affidavit signed August 4, 2006, certifying that defendant began her employment on May 16, 2006, at Seven Days Waste Control (Peo. Exh. 3e) were all regularly relied upon by all staff at the agency to assist in providing benefits. Accordingly, there was sufficient evidence that CHS relied on defendant's representations and the representations purportedly made by her employer, to the degree that CHS paid the child care providers

12

to take care of defendant's children while she worked. Such reliance did not end until August 28, 2006.

## II. Need for Recalculation of Restitution

Defendant argues that, if this court affirms defendant's theft conviction, it should remand the matter to the trial court to reconsider the amount of restitution, since the trial court mischaracterized the underlying convictions. The trial court ordered defendant to pay restitution for benefits received for the periods of time she claimed to be working at Seven Days Waste Control and A.M. Market, even though the jury acquitted her of all charges related to A.M. Market.

When victim restitution is ordered in conjunction with an award of probation, as occurred here, restitution is not strictly limited in the same fashion as it is if the defendant is sentenced to prison. (See *People v. Lent* (1975) 15 Cal.3d 481, 486-487 [ordering victim restitution as a probation condition for monies allegedly defrauded but for which the defendant was acquitted]; see also *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121; *People v. Goulart* (1990) 224 Cal.App.3d 71, 79 [in imposing victim restitution, "[a] court may also consider crimes which were charged but dismissed [citation]; uncharged crimes, the existence of which is readily apparent from the facts elicited at trial [citation]; or even charges of which the defendant was acquitted, if justice requires they be considered"]; see also *People v. Vournazos* (1988) 198 Cal.App.3d 948, 955-956; *People v. Baumann* (1985) 176 Cal.App.3d 67, 76; *People v. Miller* (1967) 256 Cal.App.2d 348, 353; *People v. Williams* (1966) 247 Cal.App.2d 394, 408.)

The rationale of these cases is that probation is an "'"'act of clemency and grace,'"'" not a matter of right. (*People v. McGavock* (1999) 69 Cal.App.4th 332, 337; see also *In re Osslo* (1958) 51 Cal.2d 371, 377.) The trial court may impose probation conditions that it could not otherwise impose, as long as the conditions are not invalid under the three *Lent* criteria, i.e., the condition has no relationship to the crime of which the offender is convicted, it relates to conduct that is not in itself criminal, and it requires or forbids conduct that is not reasonably related to future criminality. (*People v. Lent*, *supra*, 15 Cal.3d at p. 486.) Therefore, where probation is granted, restitution is not

limited to damages specifically caused by the crime of which the defendant was convicted.

In the People's Supplemental Sentencing Memorandum, the prosecutor noted that the jury found defendant guilty of three counts of perjury based on acts committed during the alleged employment by Seven Days Waste Control and acquitted defendant of the acts committed during the alleged employment by the remaining employers. The prosecutor asserted that the acquittals could have been based on a variety of reasons that no one could know, and because the jury convicted defendant on the economic count, the full amount of restitution ($24,901) was warranted. In her sentencing memorandum, defense counsel requested that defendant pay restitution "only as to those Counts which the jury found Ms. Robertson guilty." (Original emphasis.)

During sentencing and the several proceedings that occurred prior to sentencing, the trial court repeatedly referred to defendant as having been convicted of one count of the charges concerning the A.M. Market. Neither party voiced an objection or corrected the trial court. The court was under the impression that count 12 referred to the A.M. Market. The trial court stated, "To me, the big issue is whether as to A.M. Market, which is an additional $3,623.40 for the period from June 1, 2005, through August 31, 2005, there's an entitlement to restitution under the case law cited by [the prosecutor], which basically held even with a not guilty verdict, the court, based on the evidence, can order restitution. [¶] . . . [T]here was testimony that [defendant] had worked for one week for the market. If you subtract one week . . . that's actually for a month from May 1, 2005, to May 31, 2005, which is on the conservative side, subtract an entire month and running it from June 1, 2005, you come up with $3,623.40 for a total amount of $14,963.40."

The trial court stated that restitution with respect to defendant's other two alleged employers (Hurrikillzo Records and Johnson and Associates) was not warranted in light of the not guilty verdicts and the minimal amount of evidence of perjury with respect to those employers. The trial court stated it was inclined to order $3,623.40 in restitution for the A.M. Market count and asked to hear from counsel regarding this.

14

Subsequently, the trial court stated, "I think there's no question that restitution is noted [*sic*] in its entirety with respect to Seven Days Waste. As to A.M. Market, [defendant] was found guilty as to one count . . . and not guilty with respect to the other counts. The A.M. Market count she was found guilty on is count 12, which concerned perjury for the period February 2nd, 2006. Since the jury did find her guilty with respect to A.M. Market, under the cases that were cited by the People, which included *People versus Lent*, . . . the court does have the power to order restitution and is not limited by the precise amount for which [defendant] was convicted." Again, neither party disputed the court's references to A.M. Market.

The record thus shows that the trial court appeared to be disinclined to order restitution for the counts dealing with the alleged employers Hurrikillzo Records and Johnson and Associates because defendant was acquitted on these counts. The trial court also cited, however, the lack of evidence on these counts. In this respect, the Hurrikillzo Records and Johnson and Associates counts differ from the counts related to the A.M. Market, for which ample evidence was presented. Under these circumstances, we believe remand is appropriate so that the trial court may exercise its discretion in determining the amount of restitution in light of the evidence presented and the fact that defendant was not convicted of any of the counts that related to A.M. Market.

## III. Section 654 and Perjury Counts

In her opening brief, defendant argues that her intent and objective in committing the perjury counts was the theft of child care benefits. Therefore, under section 654, she cannot be punished multiple times for completing the theft. Defendant contends that if this court affirms the theft conviction and any perjury conviction, it should stay the sentences for perjury. Respondent argues that this claim is not ripe for adjudication, since defendant was granted probation.

We agree with respondent. When imposition of sentence is stayed and probation granted, section 654 does not apply. "Because sentence was not imposed . . . there is no double punishment issue. The section 654 issue should be presented to a court upon any future attempt to impose a double punishment . . . in the event of a probation violation."

15

(*People v. Wittig* (1984) 158 Cal.App.3d 124, 137.) "Probation is an act of grace and clemency designed to allow rehabilitation [citations] and is not within the ambit of the double punishment proscription of . . . section 654. [Citations.]" (*People v. Stender* (1975) 47 Cal.App.3d 413, 425, overruled on other grounds in *People v. Martinez* (1999) 20 Cal.4th 225, 240.) Therefore, we do not address defendant's claim under section 654.

## DISPOSITION

The judgment is reversed with respect to count 12. The matter is remanded for a new restitution hearing. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


                                        BOREN, P.J.

We concur:


        CHAVEZ, J.


        FERNS, J.*

_____
*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.