Filed 4/14/21  P. v. Natividad CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RYAN PATRICK NATIVIDAD,<br><br>    Defendant and Appellant. | G058448<br><br>(Super. Ct. No. 15CF1637)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Hugh Michael Brenner, Judge.  (Retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Heather E. Shallenberger, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

Ryan Patrick Natividad appeals from a postjudgment order after the trial court ordered him to pay over $75,000 in restitution.  Natividad argues the trial court abused its discretion by ordering he pay restitution.  We disagree and affirm the postjudgment order.

FACTS

A complete recitation of the facts can be found in *People v. Natividad* (Nov. 8, 2019, G055248) [nonpub. opn.].  Suffice it to say, Natividad, a police officer, claimed he injured his right hand while on duty, but camera footage proved he didn't.  A jury convicted him of insurance fraud (Pen. Code, § 550, subd. (a)(1), all further statutory references are to the Penal Code, unless otherwise indicated), and making a fraudulent statement (Ins. Code, § 1871.4, subd. (a)(1)).

The trial court suspended imposition of sentence and placed Natividad on formal probation for three years.  The court ordered him to serve 180 days in jail on electronic supervision.  As a condition of probation, the court ordered he pay restitution in an amount determined by the probation department.

Natividad requested a restitution hearing on the amount of restitution.  At the hearing, the prosecution offered five exhibits and the testimony of a Costa Mesa (City) human resource analyst (Employee).  Natividad did not dispute the City's restitution request for medical expenses, attorney's expenses, and investigation costs related to the workers' compensation claim for his hand injury and he submitted on exhibit Nos. 2 and 3; exhibit No. 1 was a summary sheet.  Natividad, however, challenged exhibit No. 4, the City's payment of insurance premiums, and exhibit No. 5, the City's payment of salary, benefits, and insurance.

Employee testified the City placed Natividad on administrative leave with pay in January 2015 because it was investigating his workers' compensation claim for fraud.  She stated that in July 2015, the City learned he was not available as required by the administrative leave process and it stopped paying him.  She said that same month the

2

City received a doctor's note from a neurosurgery facility that indicated he had been under medical care since May 2015, but he never notified the City of an illness as required by the memorandum of understanding. As relevant here, Employee explained that when an employee was absent without pay, he was responsible for paying insurance premiums. She added Natividad exhausted his accrued leave in September 2015 and he was required to personally pay for his insurance. Employee stated the City continued to provide him, and his wife and son, insurance coverage as was the City's practice, and it invoiced him directly for October, November, and December 2015, and January 2016. Employee did not believe Natividad repaid the City the $7,782.56 for these four months. She stated the City received a doctor's note clearing him for work in January 2016, and he went back on administrative leave with pay until the City terminated him in June 2016. On cross-examination, Employee acknowledged Natividad was on medical leave from October 2015 to January 2016 for a reason unrelated to his right hand injury. She also agreed he did not ask the City to pay the insurance premiums during that time, but the City did so in good faith.

Natividad called his mother to testify. She explained that after he hit his head on the bottom of a pool in May 2015, he got a medical scan that revealed a brain tumor. She said he had brain surgery a couple weeks later, and he convalesced at her home until November 2015. She also testified about receiving the City's notice Natividad had to pay the invoices or risk cancellation of the policy, but he had obtained other health insurance. On cross-examination, Mother admitted she was not involved in the purchase of the other health insurance, and she did not have documents to demonstrate Natividad had other insurance.

After the close of evidence, the trial court mused the City's loss was not "really" a result of Natividad's criminal act, but he would not have been on administrative leave if not for the criminal act. The prosecutor argued that but for Natividad's criminal act, the City would not have paid him salary and his benefits. The

prosecutor acknowledged Natividad's position the City could recover the overpayment via another remedy, but the City suffered the loss "because of what he started." Natividad's counsel argued the brain tumor treatment and recovery, and not his criminal act, were the substantial factors in the City's loss. Counsel stated the City had civil remedies and the amount should not be a condition of probation.

After expressing sympathy for Natividad's health condition, the trial court concluded "the first cause of all this was the alleged and now established workers' comp[ensation] fraud, and I don't think the [C]ity should be compelled to pursue other remedies." The court added the evidence demonstrated the City provided Natividad and his wife and child health coverage even though he was not entitled to it because he had a brain tumor and he probably could not get other health coverage. Thus, the court ruled that all the requested amounts should be included in the restitution order.

DISCUSSION

Natividad argues the trial court abused its discretion by ordering him to pay restitution of $7,782.56 for insurance premiums that were not related to or resulting from his criminal act.[1] We disagree.

Section 1203.1, subdivision (a)(3), authorizes a trial court to impose restitution as a condition of probation. Section 1203.1, subdivision (j), states the following: "The court may impose and require . . . [such] reasonable conditions[ ] as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from that breach, and generally and specifically for the reformation and rehabilitation of the probationer."

---

[1] In his opening brief, Natividad also contends the court erred by imposing restitution in the amount of $5,880.78 for insurance premiums because exhibit No. 4 and exhibit No. 5 covered the same time period. After the Attorney General explained the exhibits cover different time periods, Natividad, in his reply brief, states the Attorney General is correct and no error occurred. We treat this argument as withdrawn.

4

In *People v. Anderson* (2010) 50 Cal.4th 19, 27 (*Anderson*), our Supreme Court stated, "While restitution under section 1203.1 may serve to compensate the victim of a crime, it also addresses the broader probationary goal of rehabilitating the defendant. "'Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused."' [Citation.] Restitution 'impresses upon the offender the gravity of the harm he has inflicted upon another, and provides an opportunity to make amends.' [Citation.]" (*Anderson, supra,* 50 Cal.4th at p. 27.) The court added the following: "'California courts have long interpreted the trial courts' discretion to encompass the ordering of restitution as a condition of probation even when the loss was not necessarily caused by the criminal conduct underlying the conviction.' . . . There is no requirement the restitution order be limited to the exact amount of the loss in which the defendant is actually found culpable, nor is there any requirement the order reflect the amount of damages that might be recoverable in a civil action. [Citation.]' [Citation.]" (*Ibid*.) Where the loss was not the result of the defendant's criminal act, a trial court may impose restitution if it will serve one of section 1203.1, subdivision (j)'s purposes. (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1122.)

On appeal, and below, Natividad's contention is this is a contractual dispute and the City should pursue a civil remedy, instead of the court conditioning probation on payment of that sum. The trial court did not abuse its discretion by making the disputed amount a condition of probation.

The trial court recognized Natividad's criminal act was not the direct cause of the City paying $7,782.56 for insurance premiums, a point the Attorney General agrees with. However, the court reasoned his criminal act was "the first cause of all this." The court concluded that on balance, the amount should be made part of the restitution order. Although the court did not mention section 1203.1, subdivision (j), the court's comments establish it reasonably concluded justice required Natividad to repay the City because his breach of the law triggered the events that resulted in the City's loss. The court's

5

comments refute Natividad's claim the court ordered he pay the amount in question "merely because it believed that the City should not 'be compelled to pursue other remedies.'"

Natividad cites to *People v. Miller* (1967) 256 Cal.App.2d 348, 353, for the proposition the restitution amount "should be related to or because of the criminal act." But *Anderson* teaches the criminal conduct does not necessarily have to cause the loss. (*Anderson, supra,* 50 Cal.4th at p. 27.) He also asserts that if he had filed a *truthful* workers' compensation claim and been on unpaid medical leave, the City would have continued to pay his health insurance premiums. Employee's testimony supports his assertion. But the trial court's conclusion that based on the facts in this case, Natividad's conduct was "the first cause" did not exceed the bounds of reason. The court did not abuse its discretion.

DISPOSITION

We affirm the postjudgment order.




O'LEARY, P. J.

I CONCUR:


GOETHALS, J.

6

ARONSON, J., Concurring and Dissenting.

I respectfully disagree with the majority's conclusion the trial court properly imposed $7,782.56 in restitution for health insurance premiums the City of Costa Mesa (City) paid for defendant Ryan Natividad while he was recovering from surgery to remove a brain tumor. Natividad was convicted of insurance fraud for falsely claiming he injured his hand while escorting an arrestee into the city jail. The restitution order for these insurance payments bore no relationship to Natividad's crime or furthered the broad purposes of rehabilitating a defendant on probation.

The City placed Natividad on paid administrative leave in January 2015 while it investigated his workers compensation claim. Paid administrative leave requires the employee to be available for work. The City terminated his paid administrative leave when it received notice that Natividad was unavailable because he was recovering from surgery to remove a brain tumor. Under the memorandum of understanding (MOU), an absent employee without pay is responsible for paying insurance premiums out of pocket. Nevertheless, the City paid his health insurance premiums from October 2015 to January 2016, an amount totaling $7,782.56, and included it in the trial court's order to pay $75,427.67 in restitution.

The majority correctly relies on *People v. Anderson* (2010) 50 Cal.4th 19 (*Anderson*) to observe that a trial court has the discretion to impose restitution if it advances one of the goals in granting probation under Penal Code section 1203.1, subdivision (j), even if the restitution covers losses not proximately caused by the defendant's criminal conduct. (*Id*. at pp. 26-27.) Those goals include the imposition of probation conditions that "foster rehabilitation" and protect public safety. (*Id*. at p. 26.)

A trial court, however, does not have carte blanche to order restitution for losses unrelated to a defendant's crime. As the Supreme Court in *Anderson* explained, a probation condition is invalid if it "'"(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and

1

(3) requires or forbids conduct which is not reasonably related to future criminality."'" (*Anderson, supra,* 50 Cal.4th at p. 32.)

Here, the City terminated Natividad's paid administrative leave because his brain surgery meant he was unavailable for work, as required under the MOU. The City's Human Resource Analyst acknowledged the decision to pay Natividad's insurance premiums while he was on unpaid leave "had nothing to do with the worker's compensation fraud investigation." An order to pay "restitution" for costs that "had nothing to do" with a defendant's crime is not restitution; it is an arbitrary order that undermines the rehabilitative aspects a proper restitution order fosters. The order here bore no relationship to Natividad's conviction for filing a false claim, his conduct in not paying the insurance payments from October 2005 to January 2006 was not criminal conduct, and therefore restitution of this amount is not reasonably related to future criminality.

The discretion to order restitution as a probation conviction when the victim's loss was not necessarily caused by the defendant's criminal conduct underlying the conviction must still bear some relationship to the crime. For example, "restitution has been found proper where the loss was caused by related conduct not resulting in a conviction [citation], by conduct underlying dismissed and uncharged counts [citation] and by conduct resulting in an acquittal [citation]." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121.) But Natividad's nonpayment of insurance premiums was unrelated to his crime. If this restitution order passes muster it is difficult to discern a limiting principle to a trial court's ability to impose restitution as a probation condition.
Consequently, I would modify the restitution order by striking $7,782.56 from the total imposed, which would leave $67,645.11 in restitution.


ARONSON, J.


2